IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASVHILLE

| | |
|---|---|
| ASPEN SPECIALTY INSURANCE COMPANY, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) No. _____<br>) |
| THE QUARTERS CONDOMINIUM OWNERS ASSOCIATION, INC., | )<br>)<br>) |
| Defendant. | )<br>)<br>) |

## COMPLAINT FOR DECLARATORY JUDGMENT

Comes now Plaintiff, Aspen Specialty Insurance Company, ("Aspen"), pursuant to 28 U.S.C. § 2201, Fed. R. Civ. P. 57, and Tenn. Code. Ann. § 56-7-102(f) and submits this Complaint for Declaratory Judgment against Defendant, The Quarters Condominium Owners Association, Inc. (Quarters"), and respectfully shows:

### I.
### PARTIES

1. Aspen is a foreign insurance corporation organized under the laws of North Dakota, with its principal place of business in New York. Aspen has complied with the laws of the State of Tennessee pertaining to corporations engaged in insurance business therein and is authorized to transact business in the State of Tennessee. Aspen is thus a citizen and resident of the State of North Dakota and New York for purposes of 28 U.S.C. § 1332.

2. Defendant, Quarters, is a non-profit corporation organized under the laws of the State of Tennessee, with its principal place of business in Tennessee. Quarters may be served with process through its registered agent, Gary Lloyd II, 178 2nd Ave. North,

Nashville, Tennessee 37201. Quarters is thus a citizen and resident of the State of Tennessee for purposes of 28 U.S.C. § 1332.

## II.
## JURISDICTION AND VENUE

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 and § 2201-2201, *et seq.* This matter involves an insurance coverage dispute between a North Dakota insurance company with its principal place of business in New York against a corporation domiciled in the State of Tennessee. There is complete diversity of citizenship between Plaintiff and Defendant.

4. Venue in this matter is proper in the Middle District of Tennessee pursuant to 28 U.S.C. § 1391 because it is the judicial district in Tennessee where the Defendant is located, and because Quarters conducts business in this jurisdiction and in this division, the damage claim was submitted in this jurisdiction and in this division, the property is located in this jurisdiction and in this division and the policy was issued in this jurisdiction and in this division, venue is proper, and this Honorable Court has jurisdiction over both the subject matter and the parties herein.

5. The amount in controversy exceeds the sum of Seventy-Five Thousand and No/100 Dollars ($75,000.00), exclusive of interest and costs. More particularly, the amount in controversy could exceed the sum of Four Million, Three Hundred Thousand and No/100 Dollars ($4,300,000.00).

## III.
## BACKGROUND

6. This lawsuit involves an insurance coverage dispute regarding the property coverage part of a Tennessee Condominium Policy, issued by Aspen bearing policy

number CIUCAP006354-00 (the "Policy") effective 2/10/19-2/10/21, for property located at 178 2nd Ave. N., Nashville, TN 37201 (the "Property"). The named insured is The Quarters Condominium Owners Association, Inc. **A copy of the Policy is attached and incorporated hereto as Exhibit "A".**

7. The Property is and was, at all times relevant to this lawsuit, a contributing property to the Second Avenue Commercial History District (the "District"), which is listed on the National Register of Historic Places. The Tennessee Historical Commission is nominating authority for the District. The Property's designation on the National Register of Historic Places also entitles the Property to certain benefits including, but not limited to, financial incentives as a Certified Historic Structure under the Internal Revenue Code.

8. The Property is also within the Second Avenue Historic Preservation Zoning Overlay, which regulates the repair, maintenance, and construction of buildings within its boundaries.

9. This coverage dispute arises out of a claim for insurance benefits related to the Christmas Day Bombing on December 25, 2020. The claim was reported to Aspen on December 31, 2020, and assigned claim no. ACI13903 (the "Claim").

10. Aspen performed a good faith inspection of the Property and concluded the damage to the property merited payment in the amount of the $4,300,000 limit of insurance on the property.

11. Despite Aspen's good faith payment of the policy limits, Quarters maintains that further payment is owed under the Guaranteed Replacement Cost Endorsement ("GRC") in the Policy.

12. Aspen did not issue further payment because the GRC endorsement clearly

states provides:

**GUARANTEED REPLACEMENT COST ENDORSEMENT**

This endorsement modifies insurance provided under the following: BUILDING AND PERSONAL PROPERTY COVERAGE FORMCONDOMINIUM ASSOCIATION COVERAGE FORM

In consideration of the premium charged, it is agreed that:

A. Guaranteed Replacement Cost coverage applies only to the building(s) located at the insured Premises set forth it of Insurance. Guaranteed Replacement Cost coverage is subject to the terms and conditions set forth in this endorsement.

*****

B. Guaranteed Replacement Cost Coverage shall not apply to:

*****

1. **Building(s) that have been designated by any local, state or national governmental agency as an historic structure or landmark.** (emphasis added)

13. Quarters filed suit on April 11, 2022 against Aspen along with Quarters' insurance agent that sold the policy and the property management company that was asked to secure the Quarters' insurance policy in the Chancery Court of Davidson County at Nashville, Tennessee, Case Number 22-0504-II, alleging that Aspen breached its contract with Quarters for not paying under the GRC and generally that the agent and management company did not secure the GRC coverage it requested.

14. In the Davidson County Chancery Court case, Quarters filed a Motion for Summary Judgment claiming that the GRC Endorsement applied to the Property because it was not a historic building.

15. The Honorable I'Ashea Myles, Davidson County, Tennessee Chancellor, denied Quarters' motion without prejudice. **A copy of the Order Denying Summary**

4

**Judgment dated June 16, 2023, is attached and incorporated hereto as Exhibit "B"**.

16. Unhappy with the ruling on its Motion for Summary Judgement, Quarters dismissed their state court lawsuit only against Aspen, without prejudice. Quarters' state court lawsuit against the insurance agent and its management company is still proceeding.

17. As of this action, Aspen has not received any proof that Defendant has incurred or expended more than $4,300,000 in repair or replacement costs for the Claim.

## IV.
## CLAIM FOR DECLARATORY RELIEF

18. Aspen adopts, incorporates and references the averments and allegations contained in ¶¶ 1-17 of this Complaint.

19. Pursuant to 28 U.S.C. § 2201, Aspen seeks a judicial declaration that the Policy does not provide coverage to Defendant in excess of previously paid policy limits of $4,300,000 for the Claim.

20. The subject of this Claim for Declaratory Relief involves a claim within the jurisdiction of this Court, ripe for judicial determination, involving a definite and concrete controversy as to the legal relations of parties under the Policy.

21. The policy contains the following pertinent provisions:

**GUARANTEED REPLACEMENT COST ENDORSEMENT**

This endorsement modifies insurance provided under the following: BUILDING AND PERSONAL PROPERTY COVERAGE FORMCONDOMINIUM ASSOCIATION COVERAGE FORM

In consideration of the premium charged, it is agreed that:

C. Guaranteed Replacement Cost coverage applies only to the building(s) located at the insured Premises set forth it of Insurance. Guaranteed Replacement Cost coverage is subject to the terms and conditions set forth in this endorsement.

D. If this endorsement is attached to your policy, then we will pay the amount you actually spend which is necessary to repair or replace the damaged building on the same premises without regard to the Limit of Insurance shown in the Declarations, but only if:

   1. The building is located at a premises set forth i displayed next to the Limit of Insurance;

   2. Buildings, including garages and carports, are insured at policy inception to 100% of their Replacement cost;

   3. You accept each annual adjustment in building coverage limits to maintain proper insurance to value, and pay the corresponding premium when due, if this policy is a renewal of a prior policy; and

   4. You notify us within 30 days of the start of any physical changes which increase the value of the insured building(s) by $10,000 or more, and pay any additional premium due. Such physical changes include any new structures covered under this policy and any additions to or remodeling of existing buildings.

E. Guaranteed Replacement Cost Coverage shall not apply to:

   1. Specified Property, Outdoor Signs or other appurtenant structures, provided that this exclusion does not apply to garages or carports.

   2. Any property set forth in Section A.2 PROPERTY NOT COVERED of the applicable PROPERTY COVERAGE FORM, regardless of any endorsement or declaration page entry which extends coverage to such property.

   3. Building upgrades as required by the enforcement of any ordinance or law regulating the use, construction, repair or demolition of the building, including debris removal.

   4. Damage caused by earthquake, even if earthquake is otherwise covered under this policy.

   5. **Building(s) that have been designated by any local, state or national governmental agency as an historic structure or landmark.** (emphasis added)

F. Loss settlement under this endorsement will not exceed the lowest of the following:

   1. The replacement cost of the damaged part of the building for equivalent construction and use on the same premises;

6

2. The amount necessary to repair or replace such property intended for the same occupancy and use; or

3. The lesser of Actual Cash Value or the building Limit displayed in the Declarations if the buildings are not repaired. The provisions of this endorsement supersede any other extended replacement cost provisions of this policy.

The provisions of this endorsement supersede any other extended replacement cost provisions of this policy.

22. The GRC endorsement does not apply to the Property because of its designation as a historical building or structure by local, state or national government or administrative agencies.

23. The Property is and was, at all times relevant to this lawsuit, listed on the National Register of Historic Places. The Property's designation on the National Register of Historic Places renders the property a historical building or structure.

24. Because the Property is listed on the National Register of Historic Places, and located within Second Avenue Commercial History District, and The Tennessee Historical Commission is nominating authority for the District, the Property is designated as, and considered, a historical building or structure exempt from the GRC coverage in the Policy.

25. Because Aspen has issued payment for Quarter's entire Policy limit for the building coverage and no additional coverage is available under the Policy, Aspen does not owe any additional payments in excess of the prior paid amounts.

26. Aspen seeks a judicial declaration as to the rights and obligations of the parties.

27. Aspen seeks a declaration that, under the Policy, losses to the subject

7

property are only covered in accordance with the Policy terms, conditions, and exclusions.

28. As these are coverage matters, to which a dispute exists between the parties, and Quarters has indicated not only that it contests the coverage determination, but has threated additional litigation, this Declaratory Judgment Action is the only appropriate means to resolve questions of coverage, causation, and Policy liability.

29. Aspen further relies upon all other provisions, terms, conditions, and exclusions of the Policy in this Declaratory Judgment Action.

30. This Honorable Court is now empowered and authorized to determine liability issues under the Policy with respect to the claims by Quarters.

**WHEREFORE**, the Plaintiff, Aspen Specialty Insurance Company, prays as follows:

1. The Defendant be required to answer and appear herein;

2. That this Honorable Court adjudicate and declare that the claims made by Quarters identified in this Complaint are not covered by the Policy;

3. That this Honorable Court adjudicate and declare the Property has been designated a historical building or structure by a local, municipal, state or national governmental agency;

4. That this Honorable Court adjudicate and declare there are no other portions of the policy affording coverage for damages to the Property as a result of the Claim;

5. That this Honorable Court adjudicate and declare that Aspen is entitled to a good faith presumption that is acting in good faith in determining its obligations under the policy by filing this action, pursuant to Tenn. Code. Ann. § 56-7-102(f);

6. That this Honorable Court adjudicate and declare that Aspen has issued

payment for all covered damages under the Policy; and

7. For all such other relief to which Aspen may be entitled at law or in equity.

Respectfully Submitted,

s/Matthew B. Rogers
**MATTHEW B. ROGERS**
Registration No. 038777
DIRECT: (615) 630-7725
(615) 256-8787, Ext. 121
mrogers@bkblaw.com
**BREWER, KRAUSE, BROOKS, CHASTAIN & MEISNER, PLLC**
545 Mainstream Drive, Suite 101
Nashville, TN 37228

**JAMES P. NADER \***
TX Bar No. #24054425
LA Bar No. #14256
OK Bar No. #32156
**BENJAMIN RUSSELL \***
LA Bar No. #38885
**LOBMAN, CARNAHAN, BATT, ANGELLE & NADER**
Pennzoil Plaza
700 Milam, Suite 1300
Houston, TX 77002
TEL: (832) 871-5286
jpn@lcba-law.com

*Attorneys for Plaintiff, Aspen Specialty Insurance Company*

***TO BE ADMITTED *PRO HAC VICE***